ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

2005 APR -6   A 9 55

U.S. DISTRICT COURT
ANN ARBOR

HAROLD VANDENBOSS, # 312382
Dawn Vandenboss,

        Plaintiffs,

vs.

Case No.  04-74350

HONORABLE GEORGE CARAM STEEH
HONORABLE STEVEN D. PEPE

PATRICIA CARUSO, J. COURIER,

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY MOTION FOR PRELIMINARY INJUNCTION (#4) AND TO DISMISS CASE

Plaintiff Harold Vandenboss is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Plaintiff is proceeding *pro se*. He filed a complaint raising claims under 42 U.S.C. § 1983 alleging violations of the First and Fourteenth Amendments stemming from visitation prohibitions. Shortly before he filed a motion for a preliminary injunction, this case was transferred from the Western District of Michigan. It had not been reviewed under 28 U.S.C. § 1915 (the filing fee has been paid) or 42 U.S.C. § 1997. It does not appear that any effort has been made to serve the defendants. All pretrial proceedings have been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). It is recommended that the motion for preliminary injunction be DENIED and the complaint be DISMISSED.

I.  BACKGROUND

  A.  *Plaintiffs' Complaint and Motion for Preliminary Injunction*

On March 20, 2004, Plaintiffs Harold Vandenboss and his wife Dawn, with their children, were visiting at the Pine River Correctional Facility ("SPR"). Defendant corrections officer J. Coutier accused Plaintiff of "prodding his daughter in the visiting room." Plaintiffs requested to see the shift commander, who told Mrs. Vandenboss that if he thought any "prodding" was happening he would have immediately ended the visit. Plaintiffs interpreted this to indicate Defendant Coutier had lied. Defendant Coutier was removed from the visiting room.

During a shake-down after the visit, Plaintiffs claim that Defendant Coutier made the retaliatory false allegation that Mr. Vandenboss "grabbed his penis and said 'Why don't you suck on this ass hole?'" He made the allegation after the two of them were in an area where there were no witnesses to rebut the allegation.

On March 20, 2004, Mr. Vandenboss was charged with sexual misconduct and insolence. On March 30, he argued that the allegations were false and retaliatory, and requested that Coutier undergo a lie detector examination. The sexual misconduct charge was dismissed as duplicitive of the insolence charge, of which Mr. Vandenboss was found guilty. His request for a rehearing was denied.

On April 20, 2004, Defendant Director Caruso sent a memorandum restricting Mr. Vandenboss' visitation privileges to only attorneys and clergy. Plaintiffs did not receive a hearing under R. 791.6611(4).

Plaintiffs argue that the accusations were purely retaliatory. They seek injunctive relief and damages.

The preliminary injunction motion restates the facts alleged in the complaint.

B. *Inmate Vandenboss' Misconduct Hearing*

The hearing report shows that Prisoner Vandenboss argued that Coutier was proven wrong and embarrassed about the incident in the visiting room, and made up the retaliatory accusations. Coutier's version of the events was found more credible because there was no dispute that he strip-searched Plaintiff after the visit, and the statement was "logical in light of how upset Prisoner was and still is from the visiting room incident." The insolence charge was upheld, but the sexual conduct charge was dismissed as duplicative.

In his request for a rehearing, Mr. Vandenboss states that Coutier announced, in the presence of others, that he would get even with the prisoner after he was embarrassed. Mr. Vandenboss requested a lie detector test. The rehearing request was denied.

On April 20, 2004, Defendant Caruso sent a memorandum to Dennis Straub, Deputy Director of Correctional Facilities Administration agreeing with his recommendation that Mr. Vandenboss not be permitted any visits. Regulation 791.6609(11)[1] allowed the restriction of all visits, except for visits by attorneys and qualified clergy. The decision was based on the major misconduct finding.

C. *Grievances*

Prisoner Vandenboss completed grievance HTF 040500314 25F on May 2, 2004. In it, he states that the insolence conviction was based an officer's (he does not specifically name Coutier) misrepresentation. He asserts that while at Hiawatha Correctional Facility (HTF)

---

[1] "The director may permanently restrict all visitation privileges, except with an attorney or member of the clergy, for a prisoner who is convicted or found guilty of . . . (b) A major misconduct violation . . . that occurs during a visit or is associated with a visit."

3

Defendant Director Caruso and non-party Deputy Director Straub committed an unlawful act maliciously depriving Plaintiffs due process of law by restricting their visits without issuing them a notice of proposed visitor restriction and depriving them of an administrative hearing under R. 791.3315. The response indicated that he filed the grievance at HTF, when it should have been filed at SPR where the actions originated. Even so, the restriction is supported by policy, and the response quotes P.D. 05.03.140, which is the essentially the same as R. 791.6609(11), above. P.D. 05.03.140(CCC) states, "If a prisoner has been found guilty of [a major misconduct], the warden shall recommend that all visits be permanently restricted." Because this is what happened to Mr. Vandenboss, according to the response, there was no procedural violation.

In his Step II appeal, Prisoner Vandenboss relies on different rules and regulations. He notes that there was never a fact finding hearing conducted by the Hearings Officer to determine whether his behavior met the criteria under PD 791.6611 for visitor restriction. At the major misconduct hearing, no visitor restriction was mentioned or discussed. Plaintiffs were not informed of any of any findings relevant to a visitor restriction. Therefore maliciously upholding the erroneous visitor restriction was in furtherance of a conspiracy to deny Plaintiffs due process and equal protection of the law, in violation of their civil rights. The Step II response (which seems to be labeled with the incorrect grievance number) repeats the reasoning of the Step I response.

The Step III appeal admits that Mr. Vandenboss and prison officials are relying on differing policies, but argues that the policy directive does not have force of law, and is trumped by the administrative rule on which he relies. The Step III response clarifies the conflicting rules. The rule upon which Mr. Vandenboss relies deals with restrictions placed on an *individual*

visitor, while the applicable policy directive restricts *all* of visits to prisoners convicted of a misconduct.

In a letter to the undersigned dated February 28, 2005, Plaintiff submitted a grievance response dated December 20, 2004, for grievance number HTF 041200787 25F. He does not include anything other than the response, thus it is not possible to ascertain what or whom he grieved or to which step of the process the response applies. It appears that Prisoner Vandenboss was attempting to lift the visitation prohibition. The respondent agreed with Mr. Vandenboss that the Warden's decision to continue the visitation restriction was based on false information, and that a new letter listing the insolence misconduct will be submitted to the Director for her consideration. The grievance was marked unresolved.

II.   APPLICABLE LAW

    A.   *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act of 1995 ("PLRA"), which applies to all claims filed after April 26, 1996, requires a prisoner to exhaust all administrative remedies before bringing a federal suit regarding prison conditions. 42 U.S.C. § 1997e(a). This requirement applies to all § 1983 claims that fall under "the definition of a 'civil action with respect to prison conditions' as set forth in 18 U.S.C.A. § 3626(g)(2)." *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999) (footnote omitted) (applying exhaustion requirement to prisoner's equal protection claim). That section provides:

> the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison. . . .

18 U.S.C.A. § 3626(g)(2).

Pursuant to § 1997e(a), a prisoner may not bring a civil rights action regarding prison conditions unless administrative remedies have been exhausted. The PLRA provides in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement must be satisfied, so long as some responsive action is available, even if the relief sought is not available in that grievance process. *Booth v. Churner*, 532 U.S. 731, 736-40, 740 n.5 (2001).

The Sixth Circuit has applied the requirements of the PLRA to hold that a prisoner who files a § 1983 claim involving prison conditions must *allege* and *show* that he has exhausted all available state administrative remedies. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). That Court has further stated that when filing a civil complaint regarding prisoner conditions, "a prisoner must plead his claims with specificity and show that they have been exhausted *by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and outcome.*" *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (emphasis supplied). Failure to demonstrate exhaustion *with the complaint* will result in dismissal for failure to state a claim. *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002). Moreover, grievances filed in an attempt to exhaust administrative remedies must name the

individual subjects of the grievances so prison officials can address the claims before a suit is brought in federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).[2]

Prisoners are not only required to demonstrate exhaustion of any claims with the complaint, *Baxter*, 305 F.3d at 489, they must name any individual defendant in a Step I grievance and then proceed through the remaining grievance appeals in order to completely exhaust their administrative remedies. *Burton v. Jones*, 321 F3d. 569, 575 (2003) ("Thus, for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct *on the part of the defendant at Step I of the grievance process*.") (emphasis added); *Curry*, 249 F.3d at 505.

B.    *Dismissals under Rule 12(b)(6)*

In deciding whether to dismiss a case under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations as true and construe them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 117 (1990); *see also Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976). A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Moreover, *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). It is also well-established, however, that conclusory,

---

[2] Substantial compliance with § 1997c(a) is only sufficient to satisfy the exhaustion requirement in the "limited category of prisoner cases in which the events giving rise to the claim occurred before the effective date of the statute," which is April 26, 1996. *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

unsupported allegations of constitutional deprivation do not state a claim.[3] Dismissal is appropriate if the complaint fails to set forth an allegation of a required element of a claim. *See Craighead v. E.F. Hutton & Co.*, 899 F.3d 485, 489-90 (6th Cir. 1990).

III. ANALYSIS

  A. *Dawn Vandenboss' Standing to Bring Suit*

Section 1983 allows a constitutional claim for an injured party, and the action is personal to the injured party. *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984). When the primary constitutional tort involves the rights of another, there is no cause of action under section 1983 for emotional distress, loss of a loved one, or other collateral injuries suffered by family members. *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). *See also McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (plaintiff's relatives lacked standing to assert that plaintiff's medical care providers were deliberately indifferent to his needs or for emotional

---

[3] *See, e.g., Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir.)("[T]he allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim."), *cert. denied*, 484 U.S. 945 (1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)("It is not enough for a complaint … to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985)(Conclusory, unsupported allegations insufficient to state a claim); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983)(dismissal of complaint appropriate if allegations of constitutional deprivation are "mere conclusions"); *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981)("[T]his court has consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs."); *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971)("A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions."); *Borenstein v. City of Philadelphia*, 595 F. Supp. 853, 856 (E.D. Pa. 1984)("[C]ivil rights complaints must be pleaded with specificity and may not merely make conclusory allegations of constitutional deprivations or the existence of municipal policies."); *Egan v. Concini*, 585 F. Supp. 801, 803 (M.D. Pa. 1984)(factual specificity required in order to enable court to evaluate substance of claim).

8

distress caused by allegedly inadequate care). Under *Clayhrook*, Mrs. Vandenboss does not state a constitutional claim to challenge either the major misconduct procedures involving her husband, or the visitation restriction enforced after her husband was convicted of a major misconduct violation, and therefore does not have standing to be a Plaintiff in this suit. Also, any due process claim she would assert regarding the treatment of her husband or regarding the resultant restrictions on her right to visit her husband would fail for the reasons stated below in analyzing Mr. Vandenboss' claim.

B.   *Claim Against Coutier*

As noted above, Defendant Coutier is not specifically named in the only Step I grievance attached to Prisoner Vanenboss' complaint. He states only, "It was a biased officer who used misrepresentation in the body of a major misconduct, for the purpose of sustaining an insolence charge." Defendant Caruso and Deputy Director Straub are mentioned by name. Grievances must name the alleged wrongdoers. *Curry*, 249 F.3d at 505. Prisoners must name any individual defendant in a Step I grievance and then proceed through the remaining grievance appeals in order to completely exhaust their administrative remedies. Because Mr. Vandenboss did not name Coutier in his First Step grievance, claims against Coutier should be dismissed for failing to demonstrate exhaustion of administrative remedies.

C.   *Due Process*

Mr. Vandenboss raises a claim of procedural due process in his failure to receive a hearing on his visitation restriction. In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate.

9

*Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc). *See also Williams v. Bates*, NO. 93-2045, 1994 WL 677670, *3 (6th Cir. 1994) (unpublished) ("Even if it is assumed that [plaintiff] had a property interest in the other inmates' legal papers, he received the process to which he was due at his administrative hearings."). The factors to consider when evaluating the constitutional sufficiency of the procedure are as follows:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Due process guarantees only reasonably fair and adequate procedures are available, it does not guarantee these procedures will always produce a correct outcome. Michigan's grievance system provides state prisoners with an adequate procedure to challenge actions taken by prison officials. An inmate may file a written grievance; if its resolution is unsatisfactory to plaintiff, he may then seek sequential evaluation of its disposition by supervisory staff, the warden, the MDOC deputy director, the department director, and the ombudsman. Furthermore, if these five levels prove insufficient, Michigan law allows for judicial review of administrative decisions in the state courts. *DeWalt v. Warden, Marquette Prison*, 112 Mich. App. 313, 315 N.W.2d 584, 585 (Mich. App. 1982); *see* Mich. Comp. Laws §§ 791.251 et seq. Michigan's state remedies have been held to be adequate under federal due process standards. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D.

Mich. 1989). In short, "plaintiff has not shown that no adequate postdeprivation state remedy was available," and therefore he has not alleged a violation of his procedural due process rights so as to enable him to state a § 1983 claim. *Barnier v. Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987).

Finally, visitation restrictions violate the Constitution only if they have no reasonable relationship to any legitimate penological goal. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989) (Due Process Clause does not protect inmates' interests in "unfettered visitation"). Here, there was a facially valid penological justification for the visitor restriction because the misconduct was associated with a visit. As noted above, P.D. 05.03.140 and R. 791.6609(11) allow visitation restrictions for prisoners found guilty of major misconduct that occurs during a visit or is related to a visit.

The rule that Plaintiff cites, 791.6611(4), deals exclusively with restrictions based on individual visitors. It states, in pertinent part, "When a visitor restriction is proposed by the institution, the visitor shall be temporarily restricted from visits at all facilities pending a formal hearing . . . to determine if the restriction is proper." Here, it is not Mrs. Vandenboss specifically who is unable to visit, but rather her husband who is not permitted to have any visitors as a result of his conduct. The restriction was placed on Prisoner Vandenboss, and not his wife, therefore the rule which Plaintiff sites is inapplicable. There is a penological justification for the rule, and it is a consequence for his actions.

To the extent that he is arguing that the conviction was invalid, that type of claim is not properly brought in a section 1983 action. A major misconduct effects the good time credit and

can delay the date of release.[4] The Supreme Court determined that § 1983 could not be used if a successful plaintiff's verdict would implicitly undermine the factual findings that support punishment imposed in a prison disciplinary matter. *Edwards v. Balisok*, 520 U.S. 641, 643-46 (1997). In *Balisok*, an inmate filed a § 1983 action alleging that the procedures used in his disciplinary proceeding violated his Fourteenth Amendment due process rights.[5] The Supreme Court expanded on its holding in *Heck v. Humphrey*, 512 U.S. 477 (1994),[6] and held that where a prisoner's procedural due process claim arising from a prison disciplinary proceeding necessarily implies the invalidity of the punishment imposed, that claim is not cognizable under § 1983, but must be asserted in a *habeas* action. The Court's concern in *Heck* was with the propriety of

---

[4] P.D. 03.01.100(H) states, "a prisoner cannot earn [regular good time] credits during any month in which the prisoner engages in behavior for which s/he is subsequently found guilty of a major misconduct."

[5] "The principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits. His claim is, first of all, that he was completely denied the opportunity to put on a defense through specifically identified witnesses who possessed exculpatory evidence. It appears that all witness testimony in his defense was excluded. . . . This is an obvious procedural defect, and state and federal courts have reinstated good-time credits (absent a new hearing) when it is established." 520 U.S. at 646-47.

[6] In *Heck v. Humphrey*, the plaintiff was convicted in state court of voluntary manslaughter and incarcerated in a state prison. While the appeal from his conviction was pending, he filed suit under § 1983 against two prosecutors and a investigator with the state police, alleging that they violated (among others) his right to procedural due process by performing an unreasonable investigation, knowingly destroying exculpatory evidence and causing an illegal voice identification procedure to be used at his trial. The complaint sought compensatory and punitive monetary damages; it did not ask for injunctive relief or seek release from custody. The district court and the Seventh Circuit rejected plaintiff's claim, the latter court stating that "[i]f, regardless of the relief sought, the plaintiff is challenging the legality of his conviction, so that if he won his case the state would be obliged to release him even if he hadn't sought that relief, the suit is classified as an application for *habeas corpus* and the plaintiff must exhaust his state remedies . . . " 997 F.2d 355, 357 (1993). The Supreme Court affirmed.

12

allowing a civil damages action under § 1983 to be used as a vehicle for challenging the validity of a sentence or conviction. *Heck* reiterated that

> that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983.

*Heck* at 481.

The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." 512 U.S. at 486-87. The Supreme Court distinguished *Balisok* from *Heck*:

> Respondent, in his amended complaint, limited his request to damages for depriving him of good-time credits *without due process,* not for depriving him of good-time credits *undeservedly* as a substantive matter. That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was. 520 U.S. at 645. (Footnote omitted, emphasis in original).

In *Balisok*, the Supreme Court extended this protection against collateral attack by means of § 1983 to guilty findings in prison disciplinary hearings purportedly attended by due process safeguards.[7] In other words, *Heck* and *Balisok* effectively encapsulate findings of guilt in

---

[7] While prison disciplinary hearings -- which have far fewer procedural safeguards than criminal cases as there is limited discovery, no right to counsel, limited rights to confront accusers, and determination by a hearing officer who works for the Department of Corrections -- might be considered less worthy of such protections from collateral attack, Justice Scalia in the *Balisok* opinion gave them the same immunity from collateral attack by a § 1983 action as a criminal conviction because their "due process requirements ... are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." 520 U.S. at 647.

prisoner cases and protect them from collateral attack. The sole method for attacking a conviction and punishment is through direct appeal or *habeas corpus*.

Plaintiff was found guilty of the misconduct citation, and he has not shown that the conviction has been overturned. He may not use this case to overturn his conviction and reinstate his visitation privileges.

Removal of visitation restrictions is addressed P.D. 05.03.140 (FFF) and (GGG). Paragraph (FFF) provides that upon receiving a written request for reinstatement of visitation, the Director shall not remove the restriction until at least six months have passed since the prohibition was imposed, if the restriction was because of a major misconduct associated with a visit. Paragraph (GGG) establishes the procedure for handling a written request to reinstate visitation privileges.[8]

### III.   PRELIMINARY INJUNCTION

A party is entitled to a preliminary injunction and temporary restraining order pending further action by the court, upon a showing of irreparable injury to the moving party if the offensive activity is not enjoined. Fed. R. Civ. P. 65(b); *In re King World Prod., Inc.*, 898 F.2d 56, 59 (6th Cir. 1990). When considering a motion for a preliminary injunction, a court must consider and balance the following factors: (1) whether the movant is likely to succeed on the

---

[8]Through the Third Step grievance response received by the undersigned in March, 2005, it appears that Plaintiff attempted to request that the visitation restriction be lifted. Although it is not possible to see when that request was submitted, the response, dated December 20, 2004, is over six months after April 20, 2004, when the restriction was put in place. The grievance response states, "Grievance is unresolved," indicating that this matter was being handled within the facility.

merits; (2) whether the movant will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. *Paccar, Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994).

Here, the relief the Vandenbosses seek in their complaint, the removal of the visitation prohibition, is the same relief sought in the motion for preliminary injunction. As discussed above, Plaintiffs should not succeed on the merits of their case and thus no preliminary relief is appropriate. Therefore, it is recommended that the motion for preliminary injunction be DENIED.

## IV.  RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Plaintiffs' motion for preliminary injunction be DENIED and Plaintiffs' case DISMISSED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service, pursuant to 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 6, 2005
Ann Arbor, Michigan

STEVEN D. PEPE
UNITED STATES MAGISTRATE JUDGE

Pursuant to Rule 77(d), FRCivP
COPIES HAVE BEEN MAILED TO THE
FOLLOWING:
Harold Vandenboss #312382
Dawn Vandenboss
Patricia L. Caruso
Officer J. Courier
on April 6, 2005
DS Eleriale
DEPUTY CLERK